IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| United States of America, | C/A No. 3:25-cr-583-JFA |
| v. | |
| Trentius Tucker, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court on Trentius Tucker's (Defendant) Motion to Dismiss Indictment or Suppress Evidence and Statements. (ECF No. 59). Specifically, Defendant moves to dismiss the indictment, arguing that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") exceeded its statutory authority when it adopted the case and presented it for federal prosecution. In the alternative, Defendant moves to suppress evidence recovered from a traffic stop which occurred on June 7, 2023, and a second stop on June 12, 2023. The Government filed a response in opposition to the Motion to Dismiss, (ECF No. 66), and the Motion to Suppress, (ECF No. 65). In addition to thorough briefing, the parties presented evidence and oral argument before the Court on February 17, 2026. For the reasons stated below and at the hearing, Defendant's Motion to Dismiss and Motion to Suppress are denied.

## II.    FACTS[1]

This Motion relates to two separate stops occurring on June 7, 2023, and June 12, 2023.[2]

### A.  June 7, 2023

On June 7, 2023, Sgt. Richburg of the City of Columbia Police Department ("CPD") conducted surveillance at Oakland Ave. due to a community complaint about drug activity in the area. Sgt. Richburg spotted Defendant's vehicle which matched the description from a complaint received. Sgt. Richburg directed Inv. Hendrix to conduct a traffic stop on the vehicle if there was probable cause to do so. Inv. Hendrix testified that he observed Defendant driving at speeds ranging from 70–85mph—greater than the posted speed limit. Inv. Hendrix activated his blue lights and initiated a traffic stop. Inv. Hendrix approached the driver's side of the vehicle, occupied by Defendant and a passenger, and noticed the smell of marijuana. Upon being asked, Defendant informed Inv. Hendrix that he did not have a license and had been previously charged with driving under suspension. Inv. Hendrix asked Defendant to step out of the vehicle, and after placing him in handcuffs placed Defendant near his patrol vehicle. Inv. Hendrix asked Defendant if there was any weed in the car. Defendant stated there was not, but he admitted he had smoked before

---

[1]  These facts are based upon video footage from dash cameras ("Dash Cam"), body-worn cameras ("Body Cam"), and testimony from the responding officers.

[2]  Defendant seems to confuse or entirely misstate the dates each incident occurred throughout his motion. Body Cam footage confirms the first arrest took place on June 7, 2023, and the second arrest took place on June 12, 2023.

2

entering the vehicle. Inv. Hendrix then informed Defendant he had pulled him over for speeding while crossing multiple lanes of traffic.

Inv. Hendrix returned to the vehicle and instructed the passenger to exit. He then conducted a search of the vehicle. During this search he found a scale; pills; a thermos containing cocaine, pills, and crack cocaine; a small amount of crack cocaine on the back passenger's seat; and a small amount of marijuana. While watching the officers search the car, Defendant stated "whatever's in there, bruh, that's mine. That ain't got nothing to do with her"—referring to the passenger. Defendant was arrested and taken to jail.

B.  June 12, 2023

On June 12, 2023, five days later, Sgt. Richburg was again conducting surveillance on Oakland Ave., where he observed Defendant driving a car and pulling into a residence. Sgt. Richburg also testified that he saw an individual approach Defendant's driver's side window and conduct what appeared to be a hand-to-hand transaction. With the knowledge Defendant was driving with a suspended license, Sgt. Richburg asked Inv. Hendrix to come to the location and arrest Defendant for driving under suspension. Inv. Hendrix arrived approximately thirty minutes later and arrested Defendant. Upon conducting a search of Defendant's person, Inv. Hendrix recovered crack cocaine from Defendant's front left pocket. During a search of the vehicle, Inv. Hendrix found marijuana, pills, liquid promethazine, and a scale. Defendant was thereafter taken to jail.

As a result of Defendant's conduct on June 7, 2023, and June 12, 2023, he was indicted in a two-count indictment charging him with possession with intent to distribute

cocaine and crack cocaine with possession and the intent to distribute and distribution of cocaine. Defendant now moves to dismiss the indictment, or in the alternative, suppress evidence and statements recovered as a result of his arrests.

### III.   LEGAL STANDARD

The Fourth Amendment forbids unreasonable searches and seizures. U.S. Const. amend. IV. "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (internal quotation marks omitted). The government bears the burden to justify a warrantless search or seizure. *United States v. Curry*, 965 F.3d 313, 319 (4th Cir. 2020) (en banc). "When police violate the Fourth Amendment's prohibition on unreasonable searches and seizures, the government may be forbidden from using the improperly obtained evidence at trial." *United States v. Villa*, 70 F.4th 704, 716 (4th Cir. 2023).

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances." *United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016).

> The standard governing traffic stops under the Fourth Amendment is well-established in this Circuit. Traffic stops are subject to the reasonableness requirement of the Fourth Amendment. The standard the Supreme Court articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), applies to traffic stops because they are investigatory stops rather than custodial arrests. Accordingly, [a court must] ask (1) if the stop was legitimate at its inception, and (2) if the officer's actions during the seizure were reasonably related in

scope to the basis for the traffic stop. For the initial stop to be reasonable, the officer must have probable cause to believe a traffic violation occurred.

*United States v. Miller*, 54 F.4th 219, 228 (4th Cir. 2022) (cleaned up).

The Fourth Amendment permits brief investigative stops when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18 (1981); *see also Terry v. Ohio,* 392 U.S. 1, 21–22 (1968). Even if a traffic stop is pretextual because the officer suspects the driver is engaged in other criminal conduct, the traffic stop is still valid if "the objective circumstances [provide] a reasonable basis" for the stop. *United States v. Hassan El,* 5 F.3d 726, 731 (4th Cir. 1993).

There are two notable exceptions to the general requirement that searches without a warrant are unreasonable that are relevant here. First, under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Second, under a search incident to arrest, it is "'reasonable' for arresting officers to search the person being arrested and the area within his reach (1) 'in order to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape' and (2) 'in order to prevent [the] concealment or destruction' of evidence.'" *United States v. Davis,* 997 F.3d 191, 195 (4th Cir. 2021) (quoting *Chimel v. California,* 395 U.S. 752, 763 (1969). If officers have a reasonable belief that "evidence relevant to the crime of arrest might be found in the vehicle," officers may search the vehicle for such evidence. *Id.* at 197 (internal quotations omitted).

5

## IV.   ANALYSIS

### A. Motion to Dismiss the Indictment

Defendant argues that the ATF lacks the statutory authority to investigate federal narcotic offenses. (ECF No. 59-1, pp. 1–2, 4–8). In so arguing, Defendant cites 18 C.F.R. § 0.130 which provides the duties, powers, and functions of the ATF. *Id.* at 5–8. Defendant contends that the ATF exceeded its statutory authority by attempting to enforce federal drug laws despite the "enforcement and investigation of federal drug[] laws [being] conspicuously absent from either ATF's congressional mandate, or the regulatory structure underlying that mandate." *Id.* at 8. Thus, Defendant avers the case began as a "state court case, with no federal involvement, and should have remained so." *Id.* He states that the "ATF ha[d] no authority to 'investigate' this case … or present this case to the United States Attorney's Office and recommend federal prosecution." *Id.* Defendant cites no authority to support his position.

Importantly, Defendant was indicted by a federal grand jury. Thereafter, a United States Magistrate Judge issued an arrest warrant, and that warrant was lawfully executed. The validity of this indictment does not depend on whether the ATF assisted in the underlying investigation alongside the state authorities. It is routine for federal law enforcement agencies to become involved in matters that originated at the state level. Further, the fact that an action does not fall within the specific language of an agency's duties does not mean statutory authority has been exceeded. *See e.g. United States v. Jones,* 13 F.3d 100, 102–03 (4th Cir. 1993) ("Where … there exists a sufficient connection

between the investigated conduct and postal operations or postal property, the statutory authority has not been exceeded. The fact that a drug distribution offense … does not speak specifically in terms of postal affairs does not preclude it from constituting a postal offense. If it did, much narcotics activity on the part of postal employees might go uninvestigated, notwithstanding its connection to postal operations. District courts can be entrusted to decide whether such a connection exists in light of the totality of the relevant circumstances. Such a flexible approach is preferable to the imposition of arbitrary criteria which Congress did not enact.").

18 U.S.C. § 3051 grants special agents of the ATF the authority to make arrests "for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." The fact that "enforcement and investigation of federal drug laws" is not present in 28 C.F.R. § 0.130, which lists the general functions of the ATF, does not mean enforcement of such laws are outside of its statutory authority. Further, ATF's investigation into Defendant's conduct is sufficiently connected to the wide range of duties, powers, and functions found in 18 C.F.R. § 0.130. Accordingly Defendant's Motion to Dismiss the indictment is denied.

B. <u>Motion to Suppress</u>

Defendant's Motion to Suppress encompasses both the June 7, 2023, incident and the June 12, 2023, incident.

    i.     June 7, 2023, Arrest

Defendant contends there "was no legitimate reason for the traffic stop on June 7, 2023." (ECF No. 59-1, p. 9). He argues that the CPD officer's account of the traffic stop in his sworn warrant affidavits contradict his later submitted report.[3] *Id.* The Government argues, however, that Inv. Hendrix had a reasonable suspicion to believe that Defendant was speeding along I-20 by observing the action himself, and any minor discrepancy in the report versus the subsequent affidavit can be remedied by Inv. Hendrix's statements on the Body Cam footage where he explained to Defendant why he was being pulled over.

The direct observation of a traffic violation may establish a reasonable and articulable suspicion warranting a lawful traffic stop. *United States v. White,* 836 F.3d 437, 441 (4th Cir. 2016). In South Carolina, unless otherwise stated, the maximum speed limit allowed on any highway or freeway is 70mph. *See* S.C. Code Ann. § 56-5-1520(B). A person driving in excess of the speed limit is guilty of a misdemeanor. S.C. Code Ann. § 56-5-1520(G). Further, it is a crime to drive on the public highways of South Carolina "when the person's license to drive is cancelled, suspended, or revoked." S.C. Code Ann. § 56-1-460.

---

[3] These "contradictions" appear to at best be clerical mistakes. Inv. Hendrix's warrant affidavit and incident report state that he observed Defendant speeding while patrolling the SC interstate I-20-mile marker 65. However, Inv. Hendrix testified that he pulled Defendant over at mile marker 65 for Defendant's prior speeding. Thus, Defendant was not actually speeding at mile marker 65 as his car was stopped. These statements in the incident report and warrant affidavit do not cast doubt on Inv. Hendrix's credibility, or the overall determination that Defendant was speeding.

Here, Inv. Hendrix states he observed Defendant driving in excess of the speed limit. When providing the reason for pulling him over, Inv. Hendrix informed Defendant that he observed Defendant driving greater than the speed limit which prompted him to activate his blue lights and pull Defendant over.[4] Thus, because Inv. Hendrix observed Defendant committing a traffic violation, he had a reasonable and articulable suspicion warranting a lawful traffic stop. Accordingly, the Court finds the stop of Defendant's vehicle to be lawful.

Defendant also challenges the subsequent search of his vehicle. Inv. Hendrix stated he smelled marijuana. Inv. Hendrix asked if there was any marijuana in the vehicle. Defendant stated there was not, but admitted he had smoked earlier in the day. Once a car is lawfully stopped, upon smelling marijuana, an officer may properly conduct a search of the car. *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) (citing *United States v. Morin*, 949 F.2d 297, 300 (10th Cir.1991) ("the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.")).

Here, Defendant's vehicle was lawfully stopped. Upon smelling marijuana,[5] Inv. Hendrix conducted a search of the vehicle and discovered a scale; pills; a thermos

---

[4] Inv. Hendrix testified that he trailed Defendant's vehicle on I-20 and "paced him." While "pacing" Defendant, Inv. Hendrix observed Defendant's vehicle traveling at speeds between 70 mph and 80 mph in a 60 mph zone.

[5] Defendant argues that given hemp products are legal in South Carolina, and the smell of marijuana and hemp are virtually indistinguishable, the "smell" of marijuana could not provide either reasonable suspicion or probable cause. (ECF No. 59-1, p. 10). Defendant cites no authority to support this position which is contrary to well established Fourth Circuit precedent.

containing cocaine, pills, and crack cocaine; a small amount of crack cocaine on the back passenger's seat; and a small amount of marijuana. Accordingly, this Court finds the search of Defendant's vehicle to be lawful. Inv. Hendrix, upon smelling marijuana after lawfully stopping the vehicle had probable cause to search the vehicle for contraband.[6]

Accordingly, because the stop of the car was lawful, and the search of the car was conducted with probable cause, Defendant's Motion to Suppress Evidence and Statements as a result of his June 7, 2023, arrest is denied.

ii.  June 12, 2023, Arrest

Defendant argues the CPD officers did not have probable cause or reasonable suspicion to arrest him on June 12, 2023. (ECF No. 59-1, p. 11). Neither the facts, nor the law support Defendant's argument.

On June 12, 2023, Sgt. Richburg was again conducting surveillance on Oakland Ave., where he observed Defendant driving a car and pulling into a residence. Sgt. Richburg also testified that he saw an individual approach Defendant's driver's side window and conduct what appeared to be a hand-to-hand transaction. With the knowledge Defendant was driving with a suspended license, Sgt. Richburg asked Inv. Hendrix to come

---

[6] Defendant argues this search was improper because Defendant and the passenger were secured at the time the car was searched and thus a search incident to arrest was inappropriate because neither were unsecured within reaching distance of the car at the time of the search. This argument misses the mark and ignores the fact that the scent of marijuana in a vehicle will give an officer probable cause to search the vehicle regardless of whether any occupants of the car remained unsecured within reaching distance of the vehicle.

10

to the location and arrest Defendant for driving under suspension. Inv. Hendrix arrived approximately thirty minutes later and arrested Defendant.

It is a violation of South Carolina law to operate a motor vehicle on the public roads with a suspended driver's license. S.C. Code Ann. § 56-1-460. Therefore, Inv. Hendrix had probable cause to place Defendant under arrest for driving under suspension. Accordingly, the Court finds that Inv. Hendrix's stop and arrest of Defendant was lawful.

Inv. Hendrix then performed a search incident to arrest. As stated above, an exception to the warrant requirement to conduct a search is a search incident to arrest. This exception provides it is reasonable for arresting officers to search the person being arrested and the area within his reach in order to remove any weapons that may be present, or to prevent the concealment or destruction of evidence. *United States v. Davis,* 997 F.3d at 195.This search may extend to an automobile if the officers have a reasonable belief that the evidence relevant to the arrest may be found in the vehicle. *Id.* at 197; *see also Arizona v. Gant,* 556 U.S. 332, 343 (2009).

Here, Inv. Hendrix searched Defendant upon arresting him for driving under suspension. Inv. Hendrix found crack cocaine in Defendant's pocket. Sgt. Richburg also witnessed a hand-to-hand exchange between Defendant—while Defendant was still in the vehicle—and another individual prior to his being arrested. This is more than enough to create a reasonable belief that evidence relevant to this arrest for drug possession may be found in the vehicle. Accordingly, the Court finds the search of Defendant, and Defendant's vehicle was lawful.

Therefore, because the stop of Defendant was lawful, and the search of the automobile was conducted with reasonable suspicion evidence related to Defendant's arrest for drug possession would be found therein, Defendant's Motion to Suppress Evidence and Statements as a result of his June 12, 2023, arrest is denied.

A.   **CONCLUSION**

For the reasons stated above and at the hearing, Defendant's Motion to dismiss the indictment, and Motion to Suppress evidence for the incidents on June 7, 2023, and June 12, 2023, are denied.

IT IS SO ORDERED.

February 18, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge